UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-23356-ALTMAN/Reid

**ANTONIO GREGORI**,

    *Plaintiff*,

v.

**HOMETOWN FOODS USA, LLC**,

    *Defendant*.
_____/

## ORDER DENYING MOTION TO DISMISS

The Defendant, Hometown Foods USA, LLC ("Hometown Foods"), has moved to dismiss the Plaintiff's Complaint. *See* Motion to Dismiss [ECF No. 11]. For the reasons we outline below, the Motion to Dismiss is **DENIED**.[1]

### THE FACTS[2]

On September 1, 2023, our Plaintiff, Antonio Gregori, sued the Defendant, Hometown Foods, asserting one claim of race discrimination and one claim of retaliation under 42 U.S.C. § 1981. *See* Complaint [ECF No. 1] at 7–11. Gregori is a "Hispanic male of Peruvian national origin." *Id.* ¶ 10. "[F]rom approximately September 01, 2013, to August 03, 2023," *id.* ¶ 12, Gregori worked for Hometown Foods, a "bakery manufacturing company [that] provides private label and branded bagels and cakes to retailers and distributors," *id.* ¶ 11. Hometown Foods does business under the name Tribute Baking Company, *id.* ¶ 6, and is based out of Medley, Florida, *id.* ¶ 11.

---

[1] The Motion to Dismiss is ripe for resolution. *See* Plaintiff's Response to Defendant's Motion to Dismiss (the "Response") [ECF No. 19]; Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (the "Reply") [ECF No. 20].

[2] We take the following facts from the Plaintiff's Complaint and accept them as true for purposes of this Order.

Throughout the Plaintiff's almost-ten-year employment with Hometown Foods, he "performed his duties in an exemplary fashion." *Id.* ¶ 14. The "Plaintiff possessed all the required skills, training, and qualifications for the job in question and performed his duties without significant issue or controversy." *Ibid.* But, in August 2022, Gregori "began to experience unlawful discrimination after new manager Douglas LNU came to work at TRIBUTE BAKING COMPANY." *Id.* ¶ 17. According to the Complaint:

> Manager Douglas discriminated against and mistreated Plaintiff based on his Race, Color, and Hispanic Ethnicity. Manager Douglas engaged in a continuous pattern of harassment and making discriminatory remarks about Hispanic people. Plaintiff suffered disrespectful and abusive treatment at the hands of Manager Douglas. Plaintiff was subjected to highly offensive, derogatory, and discriminatory remarks and comments about his Race, Color, and Ethnicity (Hispanic). Defendant ridiculed and made fun of Plaintiff by calling him names like "Indio" "Indigena" in a derogatory fashion. Manager Douglas would also mistreat Plaintiff in an abusive, hostile, and aggressive manner. Defendant would scream, insult, and demean Plaintiff with derogatory statements like "Go back to your Tribe." . . . . On a daily basis, Manager Douglas belittled and humiliated Plaintiff based on his Race and Ethnicity.

*Id.* ¶¶ 18–22, 25.

After Gregori "complained and opposed the conduct of [Manager Douglas] and asked him to stop[,] . . . management offered Plaintiff a promotion to a supervisory position with a wage rate increase from $19.50 to $30.00 an hour. Thus, Plaintiff accepted the rise [sic] and continued working with Defendant." *Id.* ¶¶ 23, 31. "However, after Plaintiff's promotion, Manager Douglas increased his harassment. The unlawful conduct of this individual escalated, and he became more hostile towards Plaintiff." *Id.* ¶ 32. "On or about the last week of July 2023, Plaintiff complained again to Manager Douglas. Plaintiff told the manager to stop calling him 'Indigena' and to stop discriminating against him on the basis of his Race, Color, and Ethnicity (Hispanic)." *Id.* ¶ 35. On August 3, 2023, "Manager Douglas fired Plaintiff." *Id.* ¶ 36.

In bringing this case under § 1981, Gregori asserts that "the parties had a contractual relationship with each other." *Id.* ¶ 9. He alleges, in his discrimination claim, that "the Defendant

2

"intentionally discriminated against Plaintiff based on his Race, Color, and Hispanic Ethnicity and willfully interfered with Plaintiff's constitutional right to make and enforce contracts, to sue, to be parties, to give evidence, and to be free from racially-based discrimination while bargaining, negotiating, or entering into a contract, including the enjoyment of all benefits, privileges[,] terms, and conditions of the contractual relationship of his employment at [Hometown Foods]." *Id.* ¶ 41. In his retaliation claim, Gregori says that he "would not have been fired, but for his Race, Color, and Ethnicity," and that his termination "was directly and proximately caused by Defendant's unjustified discrimination, harassment, and retaliation and on account of Plaintiff's Race, Color, and Ethnicity . . . in direct violation of 42 U.S.C. § 1981." *Id.* ¶¶ 38–39, 42. The Defendant now moves to dismiss both counts under Federal Rule of Civil Procedure 12(b)(6). *See* Motion to Dismiss at 1.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual

allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ANALYSIS

### I.  Count I: Discrimination Based on Race, Color, and Ethnicity

In Count I of his Complaint, the Plaintiff alleges that the Defendant "intentionally engaged in unlawful employment practices and discrimination, in violation of 42 U.S.C. § 1981, by treating Plaintiff differently from similarly situated employees because of his Race, Color, and Ethnicity (Hispanic)." Complaint ¶ 51. He also avers that the "Defendant subjected [him] to different adverse employment actions, including but not limited to the following acts and omissions: harassment, hostile work environment, demotion, and wrongful termination." *Id.* ¶ 52. "The effects of [these] practices," he says, "have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his Race, Color, and Ethnicity." *Id.* ¶ 53. "As a direct and proximate result of the intentional violations by Defendant of Plaintiff's rights under 42 U.S.C. § 1981," he continues, "Plaintiff has suffered damages . . . includ[ing] back pay, front pay, loss of benefits, future pecuniary loss, inconvenience, emotional pain, suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." *Id.* ¶ 54. And Hometown Foods is vicariously liable "for the actions of its management," the Plaintiff claims, "because it failed to take adequate remedial measures to halt the discrimination, harassment, and retaliation to which Plaintiff was subjected, despite Defendant's knowledge that such discrimination and harassment was occurring." *Id.* ¶ 43.

The Defendant moves to dismiss Count I on the ground that the Plaintiff "fails to identify even one comparator who was treated more favorably than Plaintiff." Motion to Dismiss at 4. According to the Defendant, "this, alone, warrants dismissal because 'absent a qualitative comparison at the prima facie stage . . . there's no way of knowing (or even inferring) that discrimination is afoot.'"

4

*Ibid.* (quoting *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1223 (11th Cir. 2019)). "Even if Plaintiff had identified any comparators," the Defendant goes on, "he would have had to sufficiently plead that the proposed comparator is 'similarly situated' and that they have 'engaged in the same basic conduct as the plaintiff, report[ed] to the same supervisor, and share[d] the plaintiff's employment or disciplinary history.'" *Ibid.* (quoting *Cohen v. Am. Airlines Fed. Credit Union*, 2023 WL 8018913, at *4 (S.D. Fla. Nov. 20, 2023) (Scola, J.)).

The Plaintiff counters that "a section 1981 plaintiff need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case at the pleading stage." Response at 7 (cleaned up). The Plaintiff therefore believes that, even without identifying any comparators, he's stated a plausible claim of discrimination under § 1981. We agree.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court "established a three-step process for analyzing discrimination claims[.]" *Ehrhardt v. Haddad Rest. Grp., Inc.*, 443 F. App'x 452, 455 (11th Cir. 2011). Under the *McDonnell Douglas* framework, the plaintiff first bears the burden of establishing a prima facie case of discrimination. Second, "[o]nce a prima facie case is made, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Vira v. Crowley Liner Servs., Inc.*, 723 F. App'x 888, 892 (11th Cir. 2018). Third, "[i]f the employer meets its burden, the plaintiff must then show that the employer's stated reason is pretext for discrimination and/or retaliation." *Ibid.*

In *Swierkiewicz v. Sorema N. A.*, however, the Supreme Court clarified that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." 534 U.S. 506, 510 (2002). As the Supreme Court explained:

> This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss. For instance, we have rejected the argument that a Title VII complaint requires greater "particularity," because this would "too narrowly constric[t] the role of the pleadings." *McDonald v. Santa Fe Trail Transp. Co.*, [427 U.S. 273, 283 n.11 (1976)] . . . .

5

> In addition, under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case . . . . It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.

*Id.* at 511–12.[3]

While *McDonnell Douglas* and *Swierkiewicz* were Title VII cases, our Circuit has applied both precedents to *other* kinds of discrimination claims. *See, e.g.*, *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 n.6 (11th Cir. 2001) ("Although the *McDonnell Douglas* framework originally applied to Title VII cases, it is now widely accepted that the framework applies to claims of discrimination under the ADEA as well."); *Johnson v. Miami-Dade County*, 948 F.3d 1318, 1325 (11th Cir. 2020) (applying *McDonnell Douglas* to an FCRA discrimination claim). Specifically—and as relevant here—the *McDonnell Douglas/Swierkiewicz* framework applies to discrimination claims under § 1981. *See Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) ("The *McDonnell Douglas* standard for a prima facie case is applicable in employment discrimination suits brought under 42 U.S.C. § 1981."); *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004) ("[T]here is little doubt that *Swierkiewicz* governs complaints in section 1981 discrimination actions."). We therefore reject the

---

[3] The Supreme Court confirmed the continued viability of *Swierkiewicz* in *Twombly*, where it held that "*Swierkiewicz* did not change the law of pleading, but simply re-emphasized that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements." *Twombly*, 550 U.S. at 570 (cleaned up); *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014) ("[T]he Supreme Court held in *Swierkiewicz* . . . that a plaintiff need not plead facts establishing a prima facie case under *McDonnell Douglas* to survive a motion to dismiss . . . and went out of its way in *Twombly* to reaffirm that holding[.]"); *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 801 n.4 (11th Cir. 2014) (noting that *Twombly* "had no impact on *Swierkiewicz*'s statement that a plaintiff is not required to plead a prima facie case of discrimination in order to survive dismissal").

Defendant's contention—that we should dismiss the Complaint because the "Plaintiff fails to meet the threshold burden of identifying a single comparator[.]" Motion to Dismiss at 4.

As our colleague in the Middle District of Georgia recently explained in rejecting a near-identical argument:

> Defendants argue that Plaintiff fails to state a claim for race discrimination under § 1981, hanging their hat on the premise that Plaintiff failed to identify a comparator—that is, someone outside of her racial classification—which they call "an essential element of any discrimination claim." This argument is fundamentally flawed . . . . Plaintiff is not required to plead all the elements of a *McDonnell Douglas* "prima facie case" to survive a motion to dismiss . . . .
>
> Plaintiff alleges that in December 2021, she applied for a lead position in the Eligibility Department, but after Defendants interviewed her, they hired someone else from another department who was "less qualified than Plaintiff." Without the promotion or pay, "Plaintiff continued to perform all of the tasks required of the position," while the other individual continued working in her old department. The problem, according to Defendants, is that the other individual they hired is also an "African-American/black female." Defendants argue that Plaintiff therefore fails to allege a comparator outside her classification whom her employer treated more favorably. However, as shown above, Plaintiff doesn't have to allege a comparator to survive a motion to dismiss.
>
> As the Supreme Court has explained, "[i]t may be difficult to define the precise formulation of the required prima facie case in a particular case before discovery has unearthed relevant facts and evidence." *Swierkiewicz*, 534 U.S. at 507. "Consequently, the prima facie case should not be transposed into a rigid pleading standard for discrimination cases." *Id*. While a failure to produce a valid comparator may doom the avenue of proof relying on the burden-shifting framework from *McDonnell Douglas*, that framework isn't the only arrow in a plaintiff's quiver. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Thus, an inability to plead a comparator doesn't necessitate dismissal as Defendants would have it here.

*Bess v. Dental Scheduling Ctr. Inc.*, 2023 WL 9051268, at *6–8 (M.D. Ga. Dec. 29, 2023) (cleaned up); *see also Gordon v. Luxe by Tonya Jones, LLC*, 2021 WL 4197593, at *2 (N.D. Ala. Sept. 15, 2021) ("[B]oth the Supreme Court and the Eleventh Circuit have expressly refused to treat the evidentiary standard of *McDonnell Douglas* as a pleading standard for an employment discrimination plaintiff's complaint . . . . A race discrimination claim is not due to be dismissed just because the plaintiff fails to identify a comparator.").

Courts outside the Eleventh Circuit have similarly admonished defendants not to apply *McDonnell Douglas*'s summary-judgment standard on a motion to dismiss. In *Williams v. State Farm*, for example, the Northern District of Illinois had this to say about a defendant's attempt to do precisely what Hometown Foods has done here:

> In another attempt to raise the pleading standard for the intent element of a Section 1981 racial discrimination claim, State Farm contends that Plaintiffs fail to plausibly allege facts that would support an inference of intentional discrimination under the burden-shifting framework in *McDonnell Douglas* . . . .
>
> But as the Supreme Court and the Seventh Circuit have made clear, *McDonnell Douglas* is an evidentiary standard for summary judgment, not a hurdle plaintiffs must clear on a Rule 12(b)(6) motion to dismiss . . . .
>
> Contrary to State Farm's suggestion, the test set forth in *McDonnell Douglas* continues to be a summary judgment standard—not a Rule 12(b)(6) standard—even after the Supreme Court's decision in [*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. ----, 140 S. Ct. 1009, 1014 (2020)]. As the Supreme Court in *Comcast* explained, "*McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." 140 S. Ct. at 1019 (citations omitted). While the Supreme Court did state that *McDonnell Douglas* could not provide a shield for a complaint to survive a motion to dismiss when it fails to allege an essential element of a Section 1981 claim, *see id.* at 1019, the Supreme Court in no way held that defendants could use *McDonnell Douglas* as a sword in a motion to dismiss[.]

*Williams v. State Farm Mut. Auto. Ins. Co.*, 609 F. Supp. 3d 662, 678 (N.D. Ill. 2022) (cleaned up); *see also Sillah v. Burwell*, 244 F. Supp. 3d 499, 511–12 (D. Md. 2017) ("In the context of employment discrimination claims, a plaintiff is not required to plead facts that constitute a prima facie case to survive a motion to dismiss . . . . For example, [a] plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the 'indirect' method of proof." (cleaned up)); *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 622 (D.C. Cir. 2023) ("[W]hile . . . allegations regarding comparators, racial comments, or pretext obviously strengthen [a plaintiff's] discrimination complaint [under the *McDonnell Douglas* framework], they are not even required at the pleading stage." (cleaned up)). As these cases makes clear, our Defendant has confused *McDonnell Douglas*'s evidentiary requirements

8

(which apply on a motion for summary judgment) with Rule 12(b)(6)'s requirements for a motion to dismiss.

The Defendant cites *Lewis v. City of Union City* for the proposition that, "absent a qualitative comparison at the prima facie stage . . . there's no way of knowing (or even inferring) that discrimination is afoot." Response at 4 (quoting *Lewis*, 918 F.3d at 1223). But *Lewis* was an appeal of a district court's order granting summary judgment. *See Lewis*, 918 F.3d at 1220. The Defendant also relies on *Miller v. Alli*, 2023 WL 7923888 (11th Cir. Nov. 16, 2023), which *did* come up on a motion to dismiss. In that case, however, the Eleventh Circuit affirmed the district court's decision to grant the defendants' motion to dismiss because the complaint included only "conclusory allegations" and "threadbare assertions" that didn't support "a reasonable inference that but for [the plaintiff's] race she would not have been disciplined." *Id.* at *2–3. True, in *Miller*, the Circuit noted that the plaintiff, who *had* mentioned some potential comparators in her allegations, "does not explain who these white employees were, how they were similarly situated to her, or whether they had committed similarly serious offenses, nor does she explain how the promotion of a white colleague is relevant to her retaliation claim." *Id.* at *3. But the *Miller* Court (notably) didn't apply *McDonnell Douglas*'s evidentiary standard to the plaintiff's complaint. Instead, it held that, "to survive the motion to dismiss, Miller must plead facts supporting a reasonable inference that but for her race she would not have been disciplined." *Ibid.* On *this* standard, the Circuit found that the plaintiff had "allege[d] *no facts* which tend to dispel the natural conclusion that the serious error she committed at her job was the but-for cause of her being subjected to discipline and increased scrutiny" and concluded: "Without more, the factual allegations in Miller's complaint do not support a retaliation claim against [the defendant], as required to defeat the Rule 12(b)(6) motion to dismiss." *Ibid.* (emphasis added). These cases thus do not support the Defendant's view that a plaintiff must "make a prima facie case of discrimination" in his complaint. Motion to Dismiss at 2.

Having determined that the Plaintiff needn't identify comparators at this stage of the case, we ask only (as the *Miller* Court did) whether Gregori has stated a plausible claim for discrimination under § 1981. We find that he has. "[I]n order to state a claim [for discrimination] under § 1981, [the plaintiff] must allege (1) intentional racial discrimination (2) that caused a contractual injury." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295 (11th Cir. 2021). In his Complaint, Gregori alleges that the Defendant "intentionally engaged in unlawful employment practices and discrimination, in violation of 42 U.S.C. § 1981, by treating Plaintiff differently from similarly situated employees because of his Race, Color, and Ethnicity (Hispanic)." Complaint ¶ 51. In support of this claim, he says that he "was subjected to highly offensive, derogatory, and discriminatory remarks and comments" about his race and ethnicity, and that the "Defendant ridiculed and made fun of [him] by calling him names like 'Indio' [and] 'Indigena' in a derogatory fashion." *Id.* ¶ 21. He also claims that the Defendant's intentional discrimination "willfully interfered with Plaintiff's . . . enjoyment of all benefits, privileges terms, and conditions of the contractual relationship of his employment at TRIBUTE BAKING COMPANY." *Id.* ¶¶ 41. That's enough to state a viable claim for now.[4]

## II.   Count II: Retaliation

"To state a retaliation claim under § 1981, a plaintiff must allege a defendant retaliated against him because the plaintiff engaged in statutorily protected activity." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1311 (11th Cir. 2010). "Statutorily protected expression includes internal complaints of

---

[4] We recognize that, in *Cohen v. American Airlines* (one of the cases the Defendant relies on), a judge on our Court granted a motion to dismiss under "the burden-shifting framework established in *McDonnell Douglas*" because the plaintiff there "fail[ed] to provide direct evidence of discrimination or sufficient information regarding her alleged comparators . . . . [T]he amended complaint therefore contains insufficient facts to make plausible the claim that the [p]laintiff was terminated due to discrimination." 2023 WL 8018913, at *2–3. Respectfully, we disagree with that decision. As the Supreme Court said in *Swierkiewicz*, we cannot demand that a plaintiff "define the precise formulation of the required prima facie case" for employment discrimination "before discovery has unearthed relevant facts and evidence." 534 U.S. at 507.

10

discrimination to superiors, as well as complaints lodged with the EEOC and discrimination-based lawsuits." *Gerard v. Bd. of Regents of State of Ga.*, 324 F. App'x 818, 825 (11th Cir. 2009). In other words, "a retaliation claim under § 1981 must be predicated on the kinds of protected activities § 1981 was enacted to prevent *i.e.*, racial discrimination." *Michaels v. Sasser's Glass Works Inc.*, 662 F. Supp. 3d 1223, 1244 (S.D. Fla. 2023) (Altman, J.) (cleaned up).

Gregori alleges that he was fired in retaliation for complaining about the race-based discrimination he was being subjected to. *See* Complaint ¶ 15. Specifically, he claims that, "[o]n or about the last week of July 2023," he complained to Manager Douglas and told him "to stop calling him 'Indigena' and to stop discriminating against him on the basis of his Race, Color, and Ethnicity[.]" *Id.* ¶ 35. Approximately one week later, "on or about August 03, 2023, Manager Douglas fired Plaintiff." *Id.* ¶ 36. Gregori says that his firing "constituted an adverse employment action under the law," and that he "would not have been fired, but for his Race, Color, and Ethnicity[.]" *Id.* ¶¶ 37–38.

The Defendant asks us to dismiss Count II "because Plaintiff failed to sufficiently plead that Hometown terminated him because he is a member of a protected class." Motion to Dismiss at 5. According to the Defendant, Gregori hasn't done enough to establish the element of causation—*i.e.*, that he was fired *because* of his race or ethnicity—since he hasn't shown sufficient "temporal proximity" between the alleged protected activity and the adverse employment action. *Id.* at 6; *see also id.* at 6–7 ("To establish temporal proximity, the actions must be 'very close' and again, in the light most favorable to the Plaintiff, the earliest point in time the first complaint could have happened is May 29, 2023, however, by that date, Plaintiff already intended to resign." (cleaned up)). We reject this argument for two reasons.

*First*, the Defendant appears to be casting doubt on the well-pled allegations in the Complaint. For example, the Defendant tells us that the "Complaint fails to detail on or about what date [the Plaintiff's] first complaint was allegedly made, but *it can be assumed* it was before May 29, 2023[.]"

11

*Id.* at 6 n.2 (emphasis added). The Defendant also claims that Gregori "*attempts* to create a temporal proximity to establish causation by alleging 1) a second complaint to management on or about the last week of July 2023, and 2) that he was ultimately terminated on or about August 3, 2023." *Id.* at 6 (emphasis added). And the Defendant is right: Gregori *does* advance these allegations. The Defendant would have us ignore them, but "assertions [that] constitute denials of factual allegations . . . or raise issues of fact [are] not suitable for disposition at the motion to dismiss stage." *Fresh Results, LLC v. ASF Holland, B.V.*, 2020 WL 95039, at *3 (S.D. Fla. Jan. 8, 2020) (Bloom, J.). We thus cannot (and will not) rely on the Defendant's "assumptions" about the date of Gregori's complaints to management. Instead, we accept as true the Plaintiff's allegation that he complained to Manager Douglas during "the last week of July 2023"—and that he was fired approximately one week later, "on or about August 03, 2023[.]" Complaint ¶¶ 35–36; *see also Thayer v. NCL (Bahamas) Ltd.*, 2020 WL 7632099, at *9 (S.D. Fla. Dec. 4, 2020) (Torres, Mag. J.), *report and recommendation adopted*, 2020 WL 7625224 (S.D. Fla. Dec. 22, 2020) (Williams, J.) ("[W]e decline to resolve a factual dispute on a motion to dismiss because it should be reserved for summary judgment or trial."); *United States ex rel. Harris v. Lockheed Martin Corp.*, 905 F. Supp. 2d 1343, 1346 (N.D. Ga. 2012) (refusing, at the motion-to-dismiss stage, to "delve into the parties' battle over factual disputes that go far beyond the scope of the [complaint]").

*Second*, while causation *is* an element of the prima-facie case for retaliation under § 1981, temporal proximity is only one aspect of the causation inquiry. *See, e.g.*, *Dipietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1295 (S.D. Fla. 2020) (Altonaga, J.) (rejecting, in a case brought under the Florida Whistleblower Act,[5] the "proposition [that] [p]laintiff is required to establish temporal proximity to

---

[5] "The Eleventh Circuit has recognized the correctness of applying Title VII case law in actions brought under the FWA because Title VII is the 'federal equivalent' of the FWA." *Griffin v. Sun N' Lake of Sebring Improvement Dist.*, 2017 WL 3835878, at *3 n.3 (S.D. Fla. Mar. 23, 2017) (Rosenberg, J.) (quoting *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000)). And, as we've said, the

12

state a claim for retaliation at the motion-to-dismiss stage. While temporal proximity is an appropriate consideration in the causation inquiry, the [c]ourt is not convinced it should dismiss Count I as a matter of law simply because of the extended temporal gap and the City's contention [that] [[p]laintiff's circumstantial evidence is 'weak.'"). And, to borrow from one of our colleagues in the Middle District of Alabama, "it is premature for this Court to dismiss [Gregori's] termination-based retaliation claim[6] on temporal proximity alone without the parties having the benefit of discovery. After all, the lack of temporal proximity only defeats a retaliation claim in the absence of other evidence tending to show causation." *Thomas v. Auburn Univ.*, 2022 WL 428160, at *7 (M.D. Ala. Feb. 11, 2022); *cf. Locascio v. BBDO Atlanta, Inc.*, 56 F. Supp. 3d 1356, 1363 (N.D. Ga. 2014) ("[A] § 1981 complaint need not allege facts specific to make out a prima facie case [for retaliation], just enough factual matter to suggest retaliation." (cleaned up)). We'll follow that sage admonition here.

Accepting the Complaint's factual allegations as true (as we must at this stage of the case), we think Gregori has plausibly alleged that the Defendant retaliated against him *because* he engaged in a statutorily protected activity—*viz.*, complaining to his manager about racial discrimination. *See* Complaint ¶ 35. We therefore **DENY** the Motion to Dismiss Count II.

## CONCLUSION

After careful review, therefore, we hereby **ORDER and ADJUDGE** that the Defendant's Motion to Dismiss [ECF No. 11] is **DENIED**.

---

same standard that applies to race-based retaliation claims under Title VII governs race-based retaliation claims under § 1981.

[6] Although *Thomas* involved a Title VII retaliation claim, the same standard applies to retaliation claims under § 1981. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) ("To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove . . . .").

**DONE AND ORDERED** in the Southern District of Florida on February 6, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record